IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KRISTIN KING F/K/A LUZ GUZMAN,      §
                                    §
        Plaintiff,                  §
                                    §
v.                                  §      CIVIL ACTION NO.  4:18-cv-2245
                                    §
KS MANAGEMENT SERVICES, LLC,        §
                                    §
        Defendant.                  §
                                    §

## PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Kristin King f/k/a Luz Guzman ("Plaintiff") files this Amended Complaint against

KS Management Services, L.L.C. ("Defendant" or "Kelsey-Seybold").

## SUMMARY

1.      Plaintiff worked as a medical assistant for Defendant.  Her primary duties were

taking patients' vital signs, such as temperature and blood pressure, and recording their height and

weight.

2.      Plaintiff was discriminated against on the basis of her disability and terminated in

violation of her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et

seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

## THE PARTIES AND JURISDICTION

3.      Plaintiff Kristin King is a natural person residing within the confines of the

Southern District of Texas, Houston Division.  Plaintiff was formerly named Luz Guzman and has

legally changed her name.  An Order Granting Change of Name was signed on November 8, 2017

in the 312th Judicial District Court of Harris County, Texas.  Plaintiff has standing to file this

lawsuit.

4.      Defendant KS Management Services, L.L.C. is a limited liability company located within the confines of the Southern District of Texas, Houston Division.  Defendant does business as Kelsey-Seybold Clinic.

5.      Defendant may be served with this Complaint through its registered agent, Tony Lin, 2727 W. Holcombe Blvd., 4th Floor, Houston, TX 77025, or through their counsel.

6.      The Court has personal jurisdiction over Defendant based on general jurisdiction.

7.      The Court has subject matter jurisdiction over this case based on federal question jurisdiction under the Americans with Disabilities Act and the Family and Medical Leave Act.

8.      Venue is appropriate in the Southern District of Texas, Houston Division, because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district.

## FACTUAL BACKGROUND

9.      On February 13, 2012, Plaintiff began working for Kelsey-Seybold Clinic as a Registered Medical Assistant I.  At the time of her termination, Plaintiff was a Registered Medical Assistant II.

10.     Plaintiff's primary job duties were taking patients' vital signs, such as temperature and blood pressure, and recording their height and weight.

11.     On March 31, 2016, Plaintiff's supervising physician asked her to bring over extra-large cloth gowns.  As she was pulling the gowns off of the top shelf, two bundles fell back on her right shoulder.  Plaintiff heard a pop in her right shoulder, which was followed by pain and swelling.

12.     Plaintiff saw Kelsey-Seybold's doctor on the following Thursday and received an X-ray.  She was referred to Dr. Xavier Castillo, whom she visited on April 20, 2016.

13.     Dr. Castillo, who was a Kelsey-Seybold doctor, told Plaintiff it was going to be a conflict of interest for him to treat her.  Although he told Plaintiff that "there is nothing wrong with you," he gave her a steroid injection and kept her out of work for about two months.  After returning, Plaintiff continued to work, first with her right arm in a sling, then without a sling.  In July, Plaintiff began working full time without restrictions.  However, she continued to experience pain.

14.     Plaintiff sought a second opinion from outside of Kelsey-Seybold and saw Dr. Scott Neuburger in January 2017, who told her there may be a partial tear of her rotator cuff and started her on physical therapy.  After receiving a second MRI, this time with contrast, in April 2017, Dr. Neuburger recommended that she have surgery on her torn rotator cuff.  Plaintiff went on FMLA leave beginning on May 3, 2017, as soon as Dr. Neuburger told her she needed surgery.  She had the surgery on May 25, 2017.

15.     Plaintiff completed physical therapy to recover from the surgery and was informed on June 21, 2017 that she would be able to return to work.  She immediately informed Defendant. However, on June 22, 2017, Plaintiff was told by Denise Backus in the Kelsey-Seybold HR Department to wait for two weeks before returning to work.

16.     On June 29, 2017, Plaintiff discussed her restrictions with HR.  On July 3, 2017, Plaintiff was terminated and was told she could not perform her job with her injury, without ever being given the chance.

17.     This was despite the fact that Defendant accommodated an employee with a broken arm and another employee who used a walker and an oxygen tank.  Plaintiff also could have been easily accommodated.

18.     Plaintiff could perform her job duties, even with her physical restrictions, with or without accommodation.  In fact, she was able to do exactly that after her injury in 2016 and before her surgery in 2017.

19.     Moreover, Defendant fired Plaintiff on July 3, 2017, while she was on protected FMLA medical leave, before her return to work date of July 5, 2018.

20.     Plaintiff was also specifically told by Defendant not to return to work, yet Defendant cited Plaintiff's failure to return to work as the reason it was terminating Plaintiff's employment.

21.     Plaintiff has been prejudiced and has suffered damages as a result of Defendant's actions.

22.     Plaintiff now brings this action to obtain redress for violations of the Americans with Disabilities Act and the Family and Medical Leave Act.

## **FMLA CLAIMS**

23.     Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

24.     The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq.*, was enacted "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."  29 U.S.C. § 2601(b)(2).  Congress enacted the FMLA in response to concern over "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." *Miller v. AT & T Corp.*, 250 F.3d 820, 833 (4th Cir. 2001) (internal quotations omitted).

25.     "The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers." *Hunt*

*v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (citing *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir.1999); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir.1998)). The first set of provisions are prescriptive: they create a series of substantive rights, namely, the right to take up to twelve weeks of unpaid leave under certain circumstances. *Id*. The second set of provisions are proscriptive: they bar employers from penalizing employees and other individuals for exercising their rights. *Id*.; see also 29 U.S.C. § 2615(a)(1)-(2); *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999); *Bocalbos*, 162 F.3d at 383 ("[T]he Act protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights.") (citations omitted); *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 320-22 (5th Cir. 2003) (holding that there is a distinction between substantive FMLA rights and causes of action for retaliation designed to protect those rights).

26.     Defendant violated both the prescriptive and proscriptive provisions of the FMLA.

## I.     FMLA Interference

27.     Under 29 U.S.C. § 2615(a)(1), an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the FMLA. *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). A Plaintiff "must at least show that [the employer] interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her." *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013).

28.     "In order to state a prima facie case of interference under the FMLA, an employee must demonstrate only that she was entitled to a benefit that was denied." *Anderson v. New Orleans Jazz & Heritage Festival & Found., Inc.*, 464 F. Supp. 2d 562, 567 (E.D. La. 2006) (citing *Strickland v. Water Works & Sewer Board,* 239 F.3d 1199, 1206-07 (11th Cir. 2001) (citing

*O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1353-54 (11th Cir. 2000); *King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir.1999)).

29.     The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" for medical leave.

30.     Plaintiff was not provided the 12 workweeks of leave that she was entitled to and was instead terminated prior to her medical leave being exhausted. Defendant thus denied Plaintiff FMLA benefits that she was entitled to under law and violated the FMLA's mandate that an employer not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the FMLA. 29 U.S.C. § 2615(a)(1); *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999).

## II.     FMLA Discrimination and Retaliation

31.     Under 29 U.S.C. § 2615(a)(2), it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." To make out a *prima facie* case for discrimination or retaliation under § 2615(a)(2), a plaintiff must show that: "(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt*, 277 F.3d at 768 (internal citation omitted).

32.     The plaintiff need not prove that the exercise of FMLA rights was the sole cause of the unfavorable treatment; "[t]he plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated." *Mauder v. Metropolitan Transit Auth. of Harris County, Texas*, 446 F.3d 574, 583 (5th Cir. 2006).

33.     Plaintiff was on protected leave under the FMLA, was terminated, was treated less favorably than employees who were not on FMLA leave, and was terminated because of her

FMLA leave. Defendant thus violated the FMLA's mandate that makes it unlawful for employers "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

### ADA CLAIMS

34. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

### I. ADA Discrimination

35. "The ADA prohibits an employer from discriminating against a 'qualified individual with a disability on the basis of that disability.'" *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting 42 U.S.C. § 12112(a)).

36. "To establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *LHC Grp., Inc.*, 773 F.3d at 697.

37. Plaintiff had a disability as defined by the ADA, in that she had a physical impairment that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102(1).

38. Plaintiff was a qualified individual, as defined by the ADA, in that she could, with or without reasonable accommodation, perform the essential functions of her job. *See* 42 U.S.C. § 12111(8).

39. Plaintiff was subject to an adverse employment decision on account of her disability in that her disability was a motivating factor in her termination. *See LHC Group Inc.*, 773 F.3d at 702.

### II. ADA Failure to Accommodate

40. The ADA includes in its definition of discrimination and prohibits the act of "not making reasonable accommodations to the known physical or mental limitations of an otherwise

qualified individual" and the act of "denying employment opportunities" to a qualified individual "if such denial is based on the need of [the employer] to make reasonable accommodation." 42 U.S.C. § 12112(b)(5).

41.     Defendant could have reasonably accommodated Plaintiff's physical limitations but failed to do so and terminated Plaintiff based on this failure. Defendant thus failed to reasonably accommodate Plaintiff, as required by the ADA, and denied Plaintiff employment opportunities based on the need to make reasonable accommodations, as prohibited by the ADA.

## JURY DEMAND

42.     Plaintiff demands a jury trial.

## DAMAGES AND PRAYER

Plaintiff asks that she be awarded a judgment against Defendant for the following incurred damages:

a.     Actual damages in the amount of lost back pay, lost benefits, and other economic losses;

b.     Reinstatement or front-pay;

c.     Liquidated damages;

d.     Compensatory damages;

e.     Punitive damages;

f.     Prejudgment and post-judgment interest;

g.     Court costs;

h.     Attorney's fees; and

i.     All other relief to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Ahad Khan
Ahad Khan
Texas Bar No. 24092624
S.D. Texas ID No. 2981398
712 Main Street, Suite 900
Houston, TX 77002
(713) 401-3558 – Telephone
ak@ahadkhanlaw.com – Email

ATTORNEY FOR PLAINTIFF
KRISTIN KING

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon counsel of record listed below by the Southern District of Texas ECF method on the 7th day of August 2018.

Juliann H. Panagos
Kimberly R. Stuart
CRAIN CATON & JAMES PC
1401 McKinney Street, Suite 1700
Houston, TX 77010
jpanagos@craincaton.com
kstuart@craincaton.com

/s/ Ahad Khan
Ahad Khan